UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA HIPSCHMAN, an individual; ALEX HIPSCHMAN, an individual,<br><br>  Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>  Defendants. | Case No.: 3:22-cv-0903 AJB (BLM)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO COMPEL**<br><br>**[ECF No. 125]** |

Currently before the Court is Plaintiffs' November 18, 2024 Motion to Compel Defendant County of San Diego to Provide Training Materials ("MTC"). ECF No. 125. On December 2, 2024, Defendant County of San Diego ("County") filed an Opposition ("Oppo."). ECF No. 128. On December 9, 2024, Plaintiffs filed their Reply ("Reply"). ECF No. 136. After reviewing Plaintiffs' MTC, the County's Oppo, Plaintiffs' Reply and all supporting documents, the Court **DENIES** Plaintiffs' Motion for the reasons set forth below.

**RELEVANT BACKGROUND**

On June 21, 2022, Plaintiffs initiated this action alleging, *inter alia*, that Defendants County of San Diego, Nidia Romero, Elizabeth Samuels, Jose Padilla, and Mary Shehee ("County

Defendants") violated their civil rights by improperly seizing their minor child from their possession without a warrant or probable cause. ECF No. 1. On December 8, 2022, Plaintiffs filed a first amended complaint ("FAC"). ECF No. 24. On January 3, 2023, the County filed a motion to dismiss Plaintiffs' FAC for failure to state a claim [ECF No. 32] which District Judge Anthony J. Battaglia granted in part and denied in part. ECF No. 44. On September 15, 2023, the County answered Plaintiffs' FAC. ECF No. 45. On October 30, 2023, the Court conducted an Early Neutral Evaluation Conference and Case Management Conference, and, on the same day, issued a Scheduling Order regulating discovery and all other pre-trial proceedings. ECF Nos. 49, 50.

On June 5, 2024, Plaintiffs served a Request for Production of Documents ("RPD"), Set Seven. Daner Decl. at ¶ 1, ECF No. 125-2, Ex. A. On July 9, 2024 the County responded that they needed additional time to produce the responsive documents. Id. The parties met and conferred and agreed that the County had until September 30, 2024 to produce the documents. Id. On September 30, 2024, the County served its responses to Plaintiffs' RPD which included a privilege log. Id. at ¶ 2, Exs. C, D. On October 2, 2024, counsel for Plaintiffs, Stephen Daner, transmitted a meet and confer letter regarding the County's allegedly deficient responses to Plaintiffs' RPD and decision to withhold training documents. Id. at ¶ 2. On October 10, 2024, Mr. Daner and counsel for the County, Jeffrey Miyamoto, met and conferred in person regarding the discovery dispute and withheld training materials. Id. The County served a supplemental response and privilege log but did not produce any additional documents. Id. at ¶ 3.

The parties met and conferred in person on November 7, 2024 and the County indicated that no additional responses or documents would be produced. Id. The parties notified the Court of the impasse and a briefing schedule was issued. Id.

## **LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

> controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Typically, the relevance standard is broad in scope and "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in a case." Doherty v. Comenity Capital Bank & Comenity Bank, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017). Relevance, however, is not without limits. Id. The 2015 amendment to Rule 26(b) removed the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery. Fed. R. Civ. P. 26(b)(1) advisory committee's notes (2015 amendment). Instead, to fall within the scope of discovery, the information must also be "proportional to the needs of the case," requiring lawyers to "size and shape their discovery requests to the requisites of a case" while "eliminat[ing] unnecessary or wasteful discovery." Fed. Civ. R. P. 26(b)(1); Cancino Castellar v. McAleenan, 2020 WL 1332485, at *4 (S.D. Cal Mar. 23, 2020) (quoting Roberts v. Clark Cty. Sch. Dist., 312 F.R.D. 594, 603 (D. Nev. 2016)).

District courts have broad discretion to determine relevancy for discovery purposes. D.M. v. County of Merced, 2022 WL 229865, at * 2 (E.D. Cal. Jan. 26, 2022) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) and Surfvivor Media v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005)). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)"). Further, "[w]hen analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Cancino, 2020 WL 1332485, at *4 (citing Fed. R. Civ. P. 26(b)(1)).

Fed. Civ. R. P. 34 provides that a party may serve on another a request for production of documents, electronically stored information, or tangible things within the scope of Fed. Civ. R. P. 26(b). Fed. R. Civ. P. 34(a). Where a party fails to produce documents requested under Rule 34, the party propounding the request for production of documents may move to compel discovery. See Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of establishing that its requests satisfy the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, or supporting its objections." Williams v. County of San Diego, 2019 WL 2330227, at *3 (citing Bryant v. Ochoa, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)) (internal quotations omitted).

## PLAINTIFFS' POSITION

Plaintiffs' RPD, Set Seven, Nos. 106 – 112, request the County produce all documents including, "training memoranda, PowerPoint Presentations (in native form), lecture notes, letters, flyers, handouts, movies, and/or training materials (hereinafter "training materials") regarding documents given, or presentations made, to Defendant Romero regarding her responsibilities as a County social worker from 2001 to present." MTC at 2-3; Daner Decl. at Ex. A.

Plaintiffs argue these training materials are relevant and discoverable as they relate to Plaintiffs' claims arising under Monell v. Dep't of Social Services of New York, 426 U.S. 658 (1978). Specifically, Plaintiffs contend that their requests "are narrowly tailored to training materials linked to the claims alleged – i.e., unwarranted seizure and deception." Mot. at 4. Plaintiffs assert that the County's withholding of relevant documents on the grounds that they are subject to attorney-client privilege and attorney work product privilege lacks substantial justification and they have waived these privileges by "previously disclosing iterations of the withheld training materials." Id. at 5-15.

## **THE COUNTY'S POSITION**

The County contends that they properly objected to Plaintiffs' RFDs on the grounds of relevance and the documents are subject to both attorney-client and attorney work product privileges. Oppo. at 2. Specifically, Plaintiffs sought training materials provided and/or presented to Defendant Romero from 2001 until the present. Id. However, Defendant Romero's involvement with the underlying facts in this matter ended on June 28, 2020 and therefore, any trainings she received after this date are irrelevant. Id. at 1, 2. The County also contends that the training materials are subject to the attorney-client privilege and protected attorney-work product as the trainings were "prepared because of litigation" and they "reveal the context of the legal advice and strategies provided to social workers by advisory attorneys." Id. at 3-8. If the Court finds that the attorney work product privilege does not apply, Defendants contend Plaintiffs have failed to show a substantial need for these documents. Id. at 9. Finally, Plaintiffs' argument that the County has waived these privileges is without merit as these documents "were not previously produced or disclosed in prior litigation or this pending litigation" and they have not been "presented to third parties, or individuals outside the scope of the attorney-client relationship." Id. at 10-11.

## **ANALYSIS**

Plaintiffs argue that this "Court has previously resolved" the issue of whether the trainings given to County social workers were protected from disclosure due to the attorney-client privilege and attorney work product objections. Mot. at 1 (citing Hipschman v. County of San Diego, __ F.Supp.3d __, 2024 WL 3647061 (S.D. Cal. July 31, 2024) ("Hipschman I"). Specifically, Plaintiffs are relying on this Court's holding in Hipschman I that the training materials provided to social workers are not protected by attorney-client privilege or the attorney work product privilege. Id. However, the facts in Hipschman I are different from those in the instant dispute and for the reasons set forth below the Court finds that the County has met its burden in this action by demonstrating that the training materials currently at issue are protected by these privileges.

/ / /

A. <u>Relevancy</u>

Plaintiffs argue that the RPDs seek information relevant to their <u>Monell</u> claim and are narrowly tailored to "training materials linked to the claims alleged – i.e., unwarranted seizure and deception." MTC at 4. These requests for training materials were directed to those trainings "provided/presented to Defendant Nidia Romero at any point in time from 2001 to present." Daner Decl., Ex. A.

The County objects on the grounds that some of the information sought is not relevant. Specifically, they contend that "Romero's involvement with Plaintiffs and her conduct at issue in this case ended no later than June 28, 2020, because the case was transferred to another social worker on the morning of June 29, 2020." Oppo. at 1. In the supplemental privilege log provided by the Defendants, four of the five trainings "were provided/presented to Romero after Plaintiffs' son was removed from their custody." <u>Id</u>.

Plaintiffs contend that "[p]ost-incident trainings are relevant to plaintiff's <u>Monell</u> [failure to train] claim." Mot. at 4 (citing <u>Henry v. Cnty. of Shasta</u>, 132 F.3d 512, 519 (9th Cir. 1997), as amended 137 F.3d 1372 (9th Cir. 1998); <u>Corona v. City of Fontana</u>, 2023 WL 9596831 (C.D. Cal. Apr. 27, 2023)). In <u>Henry</u>, the plaintiff was seeking to hold Shasta County liable under <u>Monell</u> based on claims of a pattern and practice of deliberate indifference to detainees in the jail. <u>Henry</u>, 132 F.3d at 517. The Ninth Circuit found evidence of post-incident conduct, specifically declarations from other detainees who had been treated similarly as the plaintiff by multiple law enforcement officials, relevant to the question of whether there was a policy or practice in place to violate a detainee's constitutional rights. <u>Id.</u> In <u>Corona</u>, the plaintiff was seeking policy records and training materials from the City of Fontana and the Fontana Police Department with regard to his claim that the municipality had a policy or practice of conducting unconstitutional traffic stops. 2023 WL 9596831, at * 1. The district court found that the discovery was relevant because "post-incident policy and training records may indicate whether defendant City took any actions in the wake of the incidence to address the purportedly unconstitutional policy or training." <u>Id.</u> at * 3.

Here, Plaintiffs are arguing that post-incident trainings support their claims that the

County did not take corrective actions to address allegedly "unconstitutional policy or training" under a Monell theory of liability. Id. Accordingly, and for discovery purposes only, the Court finds that these documents are relevant but for the reasons set forth below, they are subject to attorney-client privilege and the attorney work product privilege.

B. Attorney-Client Privilege

The County objected to the RPDs, in part, because the requests sought information that it claims was protected from disclosure by the attorney-client privilege. Daner Decl. at C. The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice. The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication. The attorney-client privilege exists where: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived. See United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (internal citations and quotation marks omitted). Here, the County bears the ultimate burden of proving the privilege applies. United States v. Ruehle, 583 F.3d 600, 608 (9th Cir. 2009) (citing United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000)).

Plaintiffs' arguments are identical to the arguments they brought before this Court in Hipschman I and cite to the same cases in support of their argument that these materials are not protected by attorney-client privilege. See Mot. at 1, 5-9 (citing United States v. ChevronTexaco Corp, 241 F.Supp.2d 1065 (N.D. Cal. 2002); A.A. v. County of Riverside, 2016 WL 11954845, at *7 (C.D. Cal. Aug. 8, 2016); ACLU of N. Cal. V. FBI, 146 F.Supp.3d 1161 (N.D. Cal. 2015) rev'd on other grounds, 881 F.3d 776 (9th Cir. 2018); ACLU of San Diego & Imperial Counties v. U.S. Dep't of Homeland Sec. I, 2017 WL 9500949 (C.D. Cal. Nov. 6, 2017); Amadei v. Nielsen, 2019 WL 8165492 (E.D.N.Y Apr. 17, 2019)).

However, unlike the matter currently before the Court, in Hipschman I the Court found that it was the County's failure to provide a sufficient showing that training materials were

written or presented by attorneys that defeated the County's position that these materials were protected by any privilege. Hipschman I, 2024 WL 3647061, at *6 ("The Court finds the declaration of counsel for the County is insufficient to establish the applicability of the attorney-client privilege as it is a conclusory statement without specific details or references to any of the PowerPoint presentations and training materials."). In Hipschman I, the Court analyzed the above referenced cases and found that the County had not supplied the required detail to support a finding that the materials contained any legal advice and without such a showing, the training materials were more comparable to "general summaries of the applicable law." Id. at 5.

In contrast to Hipschman I, in the instant dispute the County has supplied the Declaration of Caitlin Rae, Assistant County Counsel, which establishes that the training materials currently at issue were prepared and presented by attorneys providing legal advice to social workers to avoid prospective litigation. Decl. of Caitlin Rae in Supp. of Oppo. to Mtn. to Compel, ECF No. 183-1 ("Rae Decl.").

In this declaration, Ms. Rae explains that in 2015 the County "created a position of 'embedded' attorney within the Office of County Counsel to bolster its support and training of County social workers." Rae Decl. at ¶ 3. Ms. Rae personally served in the role of "embedded attorney" from November of 2015 to 2019. Id. at ¶ 4. She also served as "Chief Deputy overseeing the entire Juvenile Dependency division of the Office of County Counsel from 2019 to 2022." Id. She explained that the primary purpose of the embedded attorney was to provide legal advice to social workers "with the purpose of minimizing legal exposure, decrease civil suits and reduce civil liability." Id. The duties of the embedded attorney required them to "develop, prepare and present trainings to County social workers to avoid prospective litigation." Id. at ¶ 5. The trainings were considered to be "confidential attorney-client privileged communications and attorney work product" and were maintained by the Office of County Counsel. Id. They were not shared with parties outside the County Counsel's office or individuals other than the social workers who attended the trainings. Id. Ms. Rae attests that all of the training materials currently withheld by the County as privileged were "prepared by an embedded County Counsel attorney" and either presented in person or virtually by County Counsel to County social workers.

Id. at ¶ 6. As a result, the County has provided sworn testimony establishing that the documents currently being withheld were prepared by attorneys whose duties included "provid[ing] representation and legal advice to County social workers on juvenile dependency matters" and provided or presented to the social workers in a confidential manner. Id. ¶ 4.

In their Reply, Plaintiffs argue that the County's assertion that these materials are subject to attorney-client privilege should be rejected because the "primary purpose" of the materials is to educate the social workers, and the "ancillary byproduct of proper training is that a competent, law abiding social worker would not be subjected to civil litigation." Reply at 5. Plaintiffs argue the County's position is "analogous to an argument raised and rejected in Dunsmore v. San Diego Cnty. Sheriff's Dep't, 2024 WL 1744078 (S.D. Cal. Apr. 23, 2024)." Id.

The Court finds that the facts in Dunsmore are distinguishable from the facts in this matter. Dunsmore involved a private company that contracted with the County of San Diego to provide healthcare to individuals detained in the County's jails. Id. at *1. When a detainee died, various documents would be prepared by the company's administrators, staff physician, and mental health director who are members of the "Morbidity and Mortality Review Committee." Id. at *2. After the documents were prepared, the Committee would review the circumstances of the death at a committee meeting, which the company's Chief Legal Officer would attend, along with "members of the in-house legal team." Id. at *3. In Dunsmore, the County took the position that all of the underlying documents produced at these meetings were subject to attorney-client privilege because the meetings were "primarily for the purpose of helping" in-house counsel "give legal advice to the company and also to receive information that helps [in-house counsel] give that legal advice … during the course of those meetings." Id. The Court rejected the County's argument that these documents were subject to the attorney-client privilege holding that the documents, on their face, did not contain legal advice provided by in-house counsel and the primary purpose of the documents was not to "seek or provide legal advice." Id. at *6. The documents were prepared by employees of the company and the in-house counsel played no role in their preparation or the presentation of the documents. Id. Here, unlike Dunsmore, the training materials at issue in this case were "prepared by an

embedded County Counsel" and their purpose was to "avoid prospective litigation." See Rae Decl. at ¶¶ 5, 6.

Plaintiffs also argued that Ms. Rae's declaration is too conclusory and does not provide sufficient facts to establish the applicability of the attorney-client privilege. Reply at 6. The Court disagrees. The Court has considered Ms. Rae's declaration and finds that it adequately sets forth facts establishing the elements of the attorney-client privilege.

Accordingly, the Court finds that the County has established that the training materials they have withheld are protected by the attorney-client privilege.

C. Attorney Work Product

Plaintiffs also argue that the attorney work product doctrine does not apply to these training materials because the County has "failed to show that the withheld training materials were prepared for litigation or for an adversarial purpose." Mot. at 11. The work product doctrine is not a privilege but a qualified immunity that "protects from discovery in litigation 'mental impressions, conclusions, opinions, or legal theories of a party's attorney' that were 'prepared in anticipation of litigation or for trial.'" ACLU of N. Cal. v. U.S. Dep't of Justice, 880 F.3d 473, 483 (9th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(3)). "Shielding from discovery materials prepared 'with an eye toward the anticipated litigation' protects the integrity of adversarial proceedings by allowing attorneys to prepare their thoughts and impressions about a case freely and without reservation." Id. at 484. "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" Richey, 632 F.3d at 567 (citation omitted).

In Hipschman I, the Court found that it would have been possible to find that the training materials did contain attorney work product but the County "did not provide any specific details as to why these documents are subject to the attorney work product privilege." Hipschman, 2024 WL 3647061, *6. Here, unlike Hipschman I, Ms. Rae attests that the materials currently being withheld were prepared by attorneys who created the materials and presented these trainings for the purpose of "avoid[ing] prospective civil and dependency litigation." Rae Decl.

at ¶ 6. Ms. Rae also notes that Plaintiffs have asked for these materials in their "native form" but if they were to provide these materials in that form, it would "reveal the context of the legal advice and strategies provided to social workers by attorneys." Id. at ¶ 7. As an example, according to Ms. Rae, the "notes" section of the PowerPoint documents "contain the mental impressions of the embedded attorneys who created the presentations." Id. In addition, the documents "include interpretation of the law and legal strategies used to defend from current and future civil and dependency litigation." Id.

Plaintiffs argue that the work product privilege does not apply because "Defendants failed to show that the withheld training materials were prepared for litigation or for an adversarial purpose." Mot. at 11. Plaintiffs also contend that where there is a training session provided by a social worker to other social workers that contains the same title as a presentation prepared and presented by an attorney, "it can be reasonably inferred that this training discussed [a] policy [and] would have been presented in the course of business – regardless of the presenter's status." Id. at 9.

The County argues in response that the "trainings at issue were prepared because of litigation" and "reveal the context of legal advice and strategies provided to social workers by advisory attorneys." Oppo. at 12. They rely on Ms. Rae's sworn declaration which states that there were specific attorneys assigned to prepare and present material in their capacity as attorneys in order to provide legal advice to County social workers in anticipation of litigation.

In response, Plaintiffs argue that Ms. Rae's declaration is insufficient. Reply at 6 (citing Ivy Hotel San Diego, LLC v. Houston Cas. Co., 2011 WL 4914941, at *6 (S.D. Cal. Oct. 17, 2011) ("'[I]n anticipation of litigation' has temporal and motivational components.") "In determining whether the document is entitled to work product protection, the Ninth Circuit looks to the totality of circumstances surrounding the creation of the document." Ivy Hotel, 4914941, at *6 (citing In re Grand Jury Subpoena, 357 F.3d 900, 908 (9th Cir. 2004)). Plaintiffs claim the County "would have trained and educated its social workers regardless of whether an attorney drafted the training." Reply at 7. This Court found in Hipschman I that the training materials at issue were apparently written and presented by social workers. Therefore, the County does

apparently train social workers in ways that do not necessarily anticipate litigation. But in the instant case, Ms. Rae's declaration makes clear that the training materials at issue were prepared and presented by attorneys and would not have been created unless there was the prospect of litigation. She declares that the intention by the County when they created the embedded attorney position was to "advise County social workers with the purpose of minimizing legal exposure, decrease civil suits and reduce civil liability based on trends in litigation and emerging case law." Rae Decl. at ¶ 3.

The Court finds that Defendants have sufficiently met their burden to establish that the training materials at issue, including the materials in their "native form," are protected by the attorney work product privilege.

### D. Substantial need

In the alternative, Plaintiffs argue that this work product is "discoverable if Plaintiff shows a substantial need for the materials, and cannot, without undue hardship, obtain their substantial equivalent by other means." Mot. at 11 (citing FRCP 26(b)(3)(A)). Plaintiffs contend that these materials are directly relevant to their Monell claims and they are only available through the County. Id. While there is a substantial need exception to the work-product rule, this rule is not applicable in this matter due to the Court's finding that these materials are subject to the attorney-client privilege. See Admiral Ins. Co. v. U.S. Dist. Court of Arizona, 881 F.2d 1486, 1494 (9th Cir. 1989) (Even where a party can establish that their claims "cannot be discovered" from another source, there is no "unavailability exception to the attorney-client privilege.")

### E. Waiver

Plaintiffs contend the County waived the attorney-client and work product privileges on four grounds: (1) the privilege log was insufficient to show who received the training materials; (2) the objections were untimely; (3) the County previously disclosed iterations of the withheld materials to third parties; and (4) the County waived the privilege by implication. Mot. at 13-14. The County contends that these materials have not been "previously produced or disclosed in prior litigation or this litigation," nor have they been disclosed to third parties outside the "scope of the attorney-client privilege." Oppo. at 10-11 (citing Rae Decl. at ¶ 6.)

1. Privilege log

First, the Court addresses Plaintiffs' claims that the privilege log submitted by the County "fails to show that the training materials were, and remain, confidential." Mot. at 12. Plaintiffs argue that the "privilege log must identify 'all individuals listed as receiving a copy of the document and their relationship to the County' and 'any other individuals to whom the document was disseminated and their relationship to the County.'" Id. (citing Greer v. Cnty of San Diego, 634 F.Supp.3d 911, 921 (S.D. Cal. 2022)).

Federal Rule of Civil Procedure 26(b)(5) requires that a party asserting privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Rule 26(b)(5). The privilege log provided by the County states, in part, for each privilege claim that both the written materials and the presentation was "prepared by County Counsel and presented by County Counsel for the purpose of training County social workers." See Daner Decl., Ex. D. Plaintiffs rely on Greer for the proposition that the County *must* identify all individuals to whom this information was disseminated but in Greer, unlike the matter before this Court, there was information that the documents at issue had been disseminated to third parties. Greer, 635 F.Supp.3d at 921. Here, Ms. Rae attests that the trainings, and materials provided at the training, were only "shared with County social workers who attend the trainings." Rae Decl. at ¶ 6. The Court finds that this statement is sufficient and that the County is not required to identify every social worker who received the materials or heard the presentation. Plaintiffs also contend that it is "likely that unknown training materials were/are produced in other lawsuits." Mot. at 12-13. Plaintiff's speculation that these training materials were disseminated to parties outside of County Counsel and the County social workers, without any supporting evidence, does not overcome the facts in Ms. Rae's declaration. Unlike Hipschman I, where Plaintiffs provided documentation that some of the alleged privileged documents were produced in other litigation, there is no such documentation provided in this matter. Accordingly, the Court overrules Plaintiffs' argument that the County's privilege log is inadequate.

2. Timeliness

Second, Plaintiffs argue that the County's privilege objections are waived because "Defendants Original Responses and First Supplemental Responses did *not* contain *any* objections." Mot. at 13. Instead, Plaintiffs contend that the County did not raise privilege objections until eighty three (83) days after their original response to the discovery and they "failed to explain the reason for the delay." Id. Plaintiffs argue that in order to obtain relief from an untimely objection, the County "must show 'good cause' to excuse a failure to timely object." Id. (citing In re Outlaw Laboratories, LP Litig., 2020 WL 1674552, at *8 (S.D. Cal. Apr. 6 2020)).

The Court finds that there is "good cause" for the County raising these objections when they did. The RPDs at issue were seeking more than twenty years of materials relating to all the training Defendant Romero received from the County from 2001 to the present. As set forth in the Court's September 24, 2024 Order, it was noted that on "August 26, 2024, Plaintiffs' counsel and Defendants' counsel engaged in a discovery call with the Court's law clerk pursuant to the Court's Chamber's Rules in which Plaintiffs' counsel informed the Court that they were seeking the materials from Romero's training log and Defendants' counsel indicated that they needed until September 30, 2024 to search for these materials as the requested time period exceeded twenty years." ECF No. 114 at 4. Ultimately the parties agreed to the September 30, 2024 date to produce these documents because both sides recognized that "any production deadline earlier than September 30, 2024 is not feasible for Defendant." ECF No. 103 at 3.

Plaintiffs requested training materials that Defendant Romero received from 2001 to the present. The County agreed to provide the requested material for the lengthy requested time period but indicated they needed additional time to obtain, review, and produce the materials. Plaintiffs appropriately agreed to the extension of time and agreed that the materials would be reviewed and produced by September 30, 2024. The County complied with this timeframe, conducted its review, and served a privilege log on September 30, 2024. Daner Decl. at ¶ 2. The County provided a supplemental response to the RPDs, along with a supplemental privilege log, on October 23, 2024. Id. at 3.

Accordingly, the Court finds that the County's objections are not untimely.

### 3. Prior Disclosures

Plaintiffs argue that the County waived the attorney-client privilege and work product privilege as to all the withheld training materials because the County voluntarily produced "iterations" of these materials in prior lawsuits. Mot at 13-14. Plaintiffs also state that "an express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." Id. at 13 (citing Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003)). In Hipschman I, Plaintiffs gave specific examples of documents the County claimed were privileged that had been produced in other litigation which formed the basis for the Court's finding that these disclosures expressly waived the objections based on attorney-client privilege. However, in this motion, Plaintiffs provide no such examples to support a finding that there has been an express waiver of these privilege objections.

In their Reply, Plaintiffs raise the argument for the first time that the burden is on the County to "*affirmatively* show that the attorney-client privilege has not been disclosed or waived." Mot. at 4 (citing Greer, 634 F.Supp.3d at 918) (emphasis in original.) The County relies on Ms. Rae's declaration to argue that they have not expressly waived these privileges because Ms. Rae's sworn declaration states that she is "not aware of any of the above-mentioned documents being produced or disclosed in prior litigation or this pending litigation." Oppo. at 10 (citing Rae Decl. at ¶ 6.) Neither Plaintiffs nor the County offer any examples or evidence of documents in this motion having been disclosed in previous litigation. However, to the extent that Ms. Rae's declaration lacks personal knowledge as to whether there have been previous disclosures of these materials, the County is ordered to produce any training materials at issue in this discovery dispute that have been previously disclosed in other litigation matters for the reasons the Court set forth in Hipschman I. Hipschman I, 2024 WL 3647061, at *7 ("The Court finds that the County expressly waived these privileges when it voluntarily disclosed the documents in previous cases without being ordered to do so by a court.") Any previously disclosed materials must be produced by December 16, 2024.

Alternatively, to the extent that there was no express waiver of the attorney-client privilege with regard to the withheld documents at issue, Plaintiffs argue that the Court should find that the privilege is waived because Defendants have "repeatedly demonstrated a disregard for the privilege, and voluntarily produced training materials that addressed similar and/or overlapping issues/topics." Mot. at 14 (citing Daner Decl. ¶¶ 4, 5). In his declaration, counsel for Plaintiffs refers to a number of PowerPoint presentations that were produced in separate civil litigation matters which he claims were drafted and presented by social workers. Daner Decl. at ¶¶ 4, 5. However, the titles of these presentations are not the same as the titles of the presentations set forth in Ms. Rae's declaration.[1] In Hipschman I, the Court found that there was subject matter waiver because the County's privilege log indicated that the "listed documents are either updated versions of the same documents [disclosed in previous litigation] covering the same or similar content or the exact same document that is presented each year to a new audience with a new presentation date." Id., 2024 WL 3647061, at *7. The Court reached this conclusion in Hipschman I due to the lack of "details or fact-specific analysis in [the County's] opposition or counsel's declaration." Id. Here, that is not at issue. Ms. Rae's declaration sets forth the titles of the privileged training and they are not the same as what Plaintiffs' counsel sets forth in his declaration. Ms. Rae also provides sworn testimony that these presentations were prepared by an embedded County Counsel attorney and the materials were marked "Confidential Attorney-Client Work Product." Rae Decl. at ¶ 6. Plaintiffs fail to demonstrate that the subject matter of the documents withheld in this matter involve the same subject matter as previous documents that have been produced.

For all the above stated reasons, the Court finds that the County has not waived attorney-

---

[1] In his declaration, Plaintiffs' counsel identifies one individual slide found in a non-privileged training material PowerPoint presentation, that covers multiple subjects, titled "Protective Custody Warrant." Daner Decl. at ¶ 9. Ms. Rae's declaration states that there is an entire PowerPoint presentation on the subject of "Protective Custody Warrants" over which they assert the attorney-client privilege. Rae Decl. at ¶ 6. An individual PowerPoint slide and an entire PowerPoint presentation are not the same document simply because they appear to involve the same subject matter.

client privilege with respect to the training materials that have been withheld.

F. In Camera Review

Finally, Plaintiffs argue for the first time in their Reply that in the alternative, this Court should conduct an in camera review of the documents withheld by Defendants. In support of this request, Plaintiffs state "[t]his Court previously examined allegedly privileged training materials, and found that they did not contain privileged information." Reply at 8. This statement is inaccurate. The Court did not conduct an in camera review in Hipschman I. Instead, the Court reviewed documents that were filed by Plaintiffs in support of their motion to compel. For the reasons set forth above, the Court is able to resolve the motion based on briefing and finds no need to review the documents withheld by the County. Accordingly, the Court declines to review the documents in camera.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion to compel is **DENIED**. ECF No. 125. If any of the withheld materials were previously produced in other litigation, the County must produce the previously produced materials to Plaintiffs by **December 16, 2024**. See infra at page 15.

Dated: 12/11/2024

Hon. Barbara L. Major
United States Magistrate Judge